**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna J. Lehman; Brian Lehman, ) | CV 11-00579-PHX-FJM |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| Maricopa County Community College ) District; Virginia Stahl; Frederick Stahl, ) | |
| Defendants. ) | |

The court has before it plaintiffs' motion for partial summary judgment (doc. 71) and separate statement of facts ("PSOF1") (doc. 72), defendants' response (doc. 81) and controverting statement of facts ("DSOF1") (doc. 82), and plaintiffs' reply (doc. 87). Also before us is defendants' motion for summary judgment (doc. 73) and separate statement of facts ("DSOF2") (doc. 74), plaintiffs' response (doc. 83) and controverting statement of facts ("PSOF2") (doc. 84), and defendants' reply (doc. 88).

**I**

On a motion for summary judgment we determine whether a genuine issue of material fact exists for trial, drawing all reasonable inferences in the non-moving party's favor.[1] See Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003). Defendant Maricopa

---

[1] The parties raise a number of evidentiary objections, many of which we need not address here, as they concern facts that are immaterial to the resolution of these motions.

1  County Community College District ("MCCCD") includes Scottsdale Community College
2  ("SCC") and Chandler-Gilbert Community College ("CGCC").  Defendant Virginia Stahl
3  worked during the relevant period as Vice President of Student Affairs at SCC.  Plaintiff
4  Donna Lehman began working for MCCCD in May 2002 as Coordinator of Adult Re-Entry
5  Services at SCC.[2]  At the time of hire, plaintiff was placed on a one-year probationary period,
6  which she successfully completed in May 2003.  Plaintiff was classified as a Grade 15
7  employee and member of the Management, Administration, and Technology ("MAT")
8  employee group.  As a MAT employee, plaintiff was covered by the written MAT policy and
9  could request up to twelve weeks Family and Medical Leave Act ("FMLA") leave.
10 Moreover, if a MAT employee exhausted FMLA leave, MAT policy permitted the employee
11 to request an additional medical leave of absence.  According to MAT policy, in order to lay
12 off a MAT employee for budgetary reasons, an employee must be given notice by December
13 15th of the preceding fiscal year.  MCCCD's fiscal year closes on June 30th.  In order to lay
14 off a MAT employee in June 2009, for example, the employee must receive notice by
15 December 15, 2008.  The MAT policy also outlines the grievance process available to MAT
16 employees who believe that the MAT policy has been violated.  This is a multi-step process
17 culminating with the opportunity to present an appeal to the governing board.

18       Plaintiff took FMLA leave in 2005 and 2006.  In May 2007, the Adult Re-Entry
19 Services department was closed.  Plaintiff was one of the affected employees.  Because MAT
20 policy requires notice by December 15th of the preceding year, plaintiff could not be
21 immediately laid off.  Instead, she was assigned to the Student Success Initiative department
22 at SCC.[3]  As a part of her new job duties, plaintiff organized and ran new student

---

[2] Brian Lehman and Frederick Stahl are included as parties pursuant to Arizona community property law.  However, the facts of this case concern Donna Lehman's employment.  We will simply refer to Donna Lehman as "plaintiff" and Virginia Stahl as "Stahl."

[3] The parties dispute whether plaintiff officially retained her Coordinator of Adult Re-Entry Services title, or was given a new title of Coordinator of Student Success Services and

- 2 -

1  orientations.

2        In 2008, plaintiff requested FMLA leave due to knee replacement surgery. The
3  request was granted, and plaintiff began FMLA leave on July 8, 2008. Prior to commencing
4  her leave, plaintiff arranged with co-workers to handle her job responsibilities in her absence.
5  Plaintiff exhausted her FMLA leave on September 16, 2008. She was still recovering, so she
6  began MAT medical leave on September 17, 2008.

7        Jan Gehler became SCC president in July 2008. Gehler instructed SCC vice
8  presidents to submit proposals for budget reductions, as budget cuts for the next fiscal year
9  at MCCCD were needed. Stahl was asked by Gehler to propose budget cuts. She explored
10 various budget reduction options. At some point, Stahl created a spreadsheet titled
11 "Reduction Scenarios." The spreadsheet includes a row that lists plaintiff's name, "17950,"
12 and, under a column titled "Opportunity," "Unpaid Leave 3 mos." PSOF1, ex. 19.
13 Ultimately, Stahl recommended the elimination of plaintiff's position. Stahl believed that the
14 loss of plaintiff's position would have the least impact on Student Services. On September
15 25, 2008, Gehler wrote a memorandum to MCCCD Chancellor Rufus Glasper,
16 recommending that plaintiff's position be eliminated due to "budget reductions and
17 reallocation of [plaintiff's] work duties." PSOF1 ¶ 37.

18       In early November 2008, while plaintiff was still on medical leave, plaintiff received
19 a call from MCCCD's Human Resources department notifying her that her employment
20 would be terminated as of June 30, 2009 due to budget cuts. Plaintiff was informed that the
21 layoff would be confirmed at an upcoming governing board meeting. Plaintiff received a
22 letter dated December 5, 2008 from Chancellor Glasper, confirming both her selection for
23 layoff and the December 2008 board meeting. Plaintiff's layoff was approved by the
24 MCCCD governing board on December 9, 2008 to take effect on June 30, 2009. Plaintiff
25 was one of several SCC employees selected for layoff in 2008 and 2009.

---

27 Early Alert Programs. See DSOF1 ¶ 13. However, this dispute is not material to resolution
28 of these motions.

1 Plaintiff remained on medical leave until February 2, 2009. In January 2009, Stahl
2 sent her an email notifying her that her duties at SCC had been reassigned, and that Stahl was
3 looking into alternative employment to carry plaintiff through June 30, 2009. After plaintiff
4 returned to work, she was assigned to a temporary position with Dr. Sylvia Manlove, the
5 Associate Vice Chancellor of Student Affairs. Plaintiff returned to SCC later that spring.

6 According to plaintiff, after she returned to work in February 2009, two of her co-
7 workers told her that they were told by MCCCD management that plaintiff's duties had been
8 permanently reassigned to them in August 2008. PSOF1 ¶ 36. Plaintiff testified that
9 Rebecca ("Becky") Bradley told her "I didn't think you were coming back, because. . . when
10 we took on the orientations last - last time they had permanently assigned those back to us."
11 PSOF1, ex. 2, Lehman Dep. 138:11-15. According to plaintiff, Bradley told her that Stahl
12 and another employee, Yira Brimage, told her that the reassignment of duties was permanent.
13 PSOF1, ex. 2, Lehman Dep. 138:16-18. Bradley denies telling plaintiff that her duties were
14 permanently reassigned in August 2008. DSOF1, ex. 8, Bradley Decl. ¶ 3. She states that
15 because plaintiff did not return to work until February 2009, Bradley also had to cover
16 plaintiff's duties relating to the Spring 2009 new student orientations, which were held in
17 January 2009. DSOF1, ex. 8, Bradley Decl. ¶¶ 4. According to Bradley, the January 2009
18 orientations were the "most recent" orientations that took place prior to plaintiff's return.
19 DSOF1, ex. 8, Bradley Decl. ¶ 4. Plaintiff also testified that another employee, Shelley
20 Skinner, "said to me that my job had been. . . permanently assigned to her back in August,"
21 however Skinner did not tell plaintiff the names of the people who permanently assigned
22 plaintiff's duties. PSOF1, ex. 2, Lehman Dep. 139:8-140:22.

23 Plaintiff met with Chancellor Glasper in Spring 2009 regarding the termination letter
24 she received in December 2008. Glasper personally contacted staff at CGCC, and discovered
25 there was an available one-year position. Plaintiff began working at CGCC as Coordinator
26 of Adult Re-Entry. According to plaintiff, her employment was not terminated on June 30,
27 2009. Instead, she argues that she was temporarily reassigned to the position at CGCC.
28 PSOF1 ¶ 76. Defendants argue that she was laid off on June 30, 2009 and re-hired into the

- 4 -

1  temporary position at CGCC. DSOF1 ¶ 76. Although the parties dispute whether plaintiff
2  was re-hired or merely transferred to CGCC, it is undisputed that plaintiff was aware that the
3  CGCC position was for one year only.
4        Plaintiff interviewed for a number of jobs within MCCCD without success. In May
5  2010, she met with Chancellor Glasper regarding her search for a permanent position for
6  2010-2011. Glasper is the highest ranking official at MCCCD. Pursuant to Glasper's
7  suggestion, plaintiff met with Dr. Phil Randolph, Interim Vice Chancellor of Human
8  Resources (the highest ranking Human Resources official at MCCCD) on June 23, 2010 to
9  discuss her employment situation. Plaintiff's one-year position with CGCC ended on June
10 30, 2010. Plaintiff chose not to submit a grievance to MCCCD regarding the termination of
11 her employment at CGCC.
12       Plaintiff's amended complaint asserts two counts for (1) violation of the FMLA and
13 (2) deprivation of property without due process of law in violation of 42 U.S.C. § 1983.
14 Plaintiff moves for summary judgment on the issue of liability for both counts. Defendants
15 cross-move for summary judgment on both counts.
16                                    **II**
17       The FMLA prohibits an employer from interfering with an employee's exercise of her
18 FMLA rights. 29 U.S.C. § 2615(a)(1). This includes a prohibition on negatively considering
19 an employee's use of FMLA leave when making adverse employment decisions. Bachelder
20 v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001). To prevail on her FMLA
21 interference claim, plaintiff must show "by a preponderance of the evidence that her taking
22 of FMLA-protected leave constituted a negative factor in the decision to terminate her." Id.
23 at 1125. She may do so by either direct or circumstantial evidence. Id.
24       Plaintiff argues that she has shown that taking FMLA leave constituted a negative
25 factor in defendants' decision to lay her off in 2008 and is entitled to summary judgment on
26 her interference claim. First, plaintiff argues that Gehler's September 25, 2008 memorandum
27 to Chancellor Glasper reveals that she was recommended for layoff because her duties were
28 reallocated. According to plaintiff, her duties were only reallocated because she was on

- 5 -

1  FMLA leave, and thus the memorandum constitutes direct evidence that her FMLA leave
2  played a negative role in her layoff. It is undisputed, however, that plaintiff failed to return
3  to work after she exhausted her FMLA leave on September 16, 2008. Instead, she remained
4  on MAT medical leave until February 2009. An employee is no longer entitled to job
5  protection under the FMLA if she fails to return to work at the expiration of her FMLA-
6  eligible leave. See Farina v. Compuware Corp., 256 F. Supp. 2d 1033, 1054 (D. Ariz. 2003)
7  ("Because Plaintiff took longer than 12 weeks leave, she is only entitled to an equivalent
8  position under the FMLA if she was prepared to return to work during a time designated as
9  FMLA leave."); see also Jackson v. Simon Prop. Grp., Inc., 795 F. Supp. 2d 949, 965 (N.D.
10 Cal. 2011) (because plaintiff was not able to return to work at end of 12-week FMLA period,
11 "the FMLA did not entitle Plaintiff to be restored to his former position or to any other
12 position"). Thus, after September 16, 2008, the FMLA did not require defendants to restore
13 plaintiff to her prior position, or any position. In other words, defendants were free to
14 permanently reassign her duties after September 16, 2008 without violating the FMLA.[4]
15 That a memorandum dated September 25, 2008 states that plaintiff's duties were permanently
16 reassigned and is a reason for recommending she be laid off is not in itself direct evidence
17 that her taking of FMLA leave was a negative factor, because defendants were not required
18 by the FMLA to return her to any position after the expiration of her 12-week FMLA leave
19 on September 16, 2008. That the memorandum is dated only nine days after her FMLA leave
20 expired may constitute circumstantial evidence that her FMLA leave influenced the decision,
21 if plaintiff can show that the decision to permanently reassign her duties was made while she
22 was still on FMLA-protected leave.
23      Plaintiff attempts to show that her duties were permanently reassigned while she was
24 on FMLA-protected leave by referencing statements made to her by co-workers Bradley and
25 Skinner that her duties were permanently reassigned as of August 2008. Defendants argue

---

[4] Whether reassignment of plaintiff's duties would violate MAT policy is a separate question that is not before us.

- 6 -

1  both statements are inadmissible hearsay.  With respect to Skinner's statement, plaintiff
2  testified that Skinner did not identify the names of people who told Skinner plaintiff's duties
3  were reassigned.  <u>PSOF1</u>, ex. 2, Lehman Dep. 139:8-140:22.  Even assuming Skinner's
4  statement to <u>plaintiff</u> is admissible, the statements to <u>Skinner</u> by unidentified MCCCD
5  employees are inadmissible hearsay.  See <u>Zaben v. Air Prods. & Chems., Inc.</u>. 129 F.3d
6  1453, 1457 (11th Cir. 1997) (statements made to plaintiff by employees that "other
7  unidentified declarants" said "they" wanted to get rid of older employees properly excluded
8  as hearsay); <u>Carden v. Westinghouse Elec. Corp.</u>, 850 F.2d 996, 1003 (3d Cir. 1988)
9  (statement by unidentified person not admissible as an admission by party-opponent because
10 "the author of the statement is unknown").

11       Plaintiff argues that Bradley's statement to her about the permanent reassignment of
12 her duties qualifies as an admission by party-opponent.  A party seeking to admit a statement
13 under Fed. R. Evid. 801(d)(2)(D) must lay adequate foundation to show that the statement
14 "relates to a matter within the scope of the agent's employment."  <u>Sea-Land Serv., Inc. v.</u>
15 <u>Lozen Int'l, LLC</u>, 285 F.3d 808, 821 (9th Cir. 2002) (citation omitted).  Although we
16 consider the contents of the statement, contents alone are insufficient to establish that the
17 statement was made within the scope of the relationship.  <u>Id.</u>  Plaintiff offers no argument to
18 show that Bradley's statement was made within the scope of her employment; she simply
19 states that it was.  Even if Bradley's statement is admissible under this rule, however, it still
20 fails to support plaintiff's argument that her job duties were permanently reassigned in
21 August 2008.  Plaintiff testified that Bradley told her that her job duties regarding new
22 student orientation were permanently reassigned "when we took on the orientations last - last
23 time."  <u>PSOF1</u>, ex. 2, Lehman Dep. 138:4.  Bradley testified that the "last time" she had to
24 assist with orientation prior to plaintiff's return was January 2009.  <u>DSOF1</u>, ex. 8, Bradley
25 Decl. ¶ 4.  Plaintiff has not presented any evidence to suggest that the January 2009
26 orientation did not happen.  Accordingly, plaintiff has not supported her assertion that her
27
28

1 duties were permanently reassigned in August 2008.[5]

2 Next, plaintiff argues that the "Reduction Scenario" spreadsheet listing plaintiff's
3 name with the notation "Unpaid Leave 3 mos.," PSOF1, ex. 19, is a striking indication that
4 defendants negatively considered plaintiff's use of FMLA leave when deciding to end her
5 employment. Plaintiff argues that the spreadsheet was a list of prospective people being
6 considered for layoff, and lists her FMLA leave as a reason for her inclusion on the list.
7 PSOF1 ¶ 42. She attempts to support this contention by citing to Gehler's deposition. The
8 portions cited, however, reveal that Gehler did not know who prepared the report, it did not
9 look familiar, and she did not know what the numbers represented or what the "Unpaid Leave
10 3 mos." meant. PSOF1, ex. 3, Gehler Dep. 99:20-101:19. By contrast, it is undisputed that
11 Stahl was looking for ways to cut the budget without conducting layoffs. Defendants
12 presented Stahl's testimony that she created the spreadsheet in an attempt to meet the required
13 reductions without conducting layoffs by calculating overlooked savings. Stahl testified that
14 she listed plaintiff's unpaid leave to show that this had saved the department money. DSOF1,
15 ex. 2. Plaintiff has not pointed to any controverting evidence to support her assumptions
16 about the purpose of the spreadsheet.

17 Plaintiff also argues that Stahl's preparation of a timeline detailing five years of
18 plaintiff's medical absences reveals her consideration of FMLA leave as a negative factor
19 when deciding to recommend her for layoff. The timeline reveals that it was created

---

21 [5] Plaintiff's statement of facts references an email sent by Stahl on December 15, 2008
22 indicating that there was no longer work for Lehman at SCC, and an email from Stahl to
plaintiff on January 13, 2009 notifying plaintiff that her job duties had been reassigned.
23 PSOF1 ¶¶ 59-60. Neither of these emails, sent well after the exhaustion of plaintiff's FMLA
24 leave, suggest that her duties were reassigned prior to September 16, 2008. Plaintiff also
references an email Stahl sent on August 20, 2008 regarding who was working on "Early
25 Alert," one of the programs headed by Lehman. Stahl suggested discussing whether the
program would be functioning by mid-September, because "[w]e cannot count on Donna
26 Lehman to be back before then." PSOF2, ex. 16. But it is undisputed that Lehman was
entitled to remain on FMLA leave through September 16, 2008. Nothing in the email would
27 allow a jury to reasonably infer that Stahl was looking to permanently reassign Lehman's
28 Early Alert duties.

- 8 -

1    sometime after plaintiff's return to work on February 2, 2009, because it lists this as her exact
2    date of return. PSOF1, ex. 17. Plaintiff has not argued otherwise. It is unclear, and plaintiff
3    does not explain, how a reasonable jury could conclude that a timeline created months after
4    Stahl's September 2008 memorandum recommending plaintiff's position for layoff, and
5    months after the Board voted to approve plaintiff's layoff, shows that plaintiff's use of FMLA
6    leave played a part in Stahl's September 2008 recommendation.

7    Finally, plaintiff argues that we should conclude that her discharge was influenced by
8    her FMLA leave because her name does not appear on two memoranda sent by Gehler to
9    Chancellor Glasper and Human Resources Vice Chancellor Crusoe on December 1, 2008.
10   PSOF1 ¶¶ 52-53. Plaintiff argues that the absence of her name on these memoranda, which
11   recommend the elimination of certain positions at SCC, shows that she was not really part
12   of the layoffs conducted for budgetary reasons. Plaintiff concludes that the termination of
13   her position must be connected to her FMLA leave. Yet plaintiff agrees that Gehler
14   recommended her position for layoff to Glasper back in September 2008, and was notified
15   of the decision to lay her off by Human Resources in November 2008. Thus, at the time
16   Gehler sent the December memorandum to Glasper, it is undisputed that Gehler had already
17   recommended plaintiff's position for layoff, and plaintiff was already notified of the Board's
18   intention to vote on her layoff at the December 2008 meeting. Plaintiff argues that Gehler's
19   failure to recommend her position for layoff to Glasper in December 2008 (when Gehler had
20   already made this recommendation to Glasper months prior) is significant. Even if plaintiff
21   is correct in concluding that her omission from the December 1, 2008 memoranda means she
22   was not a part of that round of layoffs, it does not reasonably follow that Gehler's
23   recommendation to lay her off in September 2008 must have been influenced by her taking
24   of FMLA leave.

25   In sum, it is undisputed that plaintiff's FMLA-protected leave ended on September 16,
26   2008, and Gehler recommended the termination of her position, citing budgetary concerns
27   and the reassignment of plaintiff's duties, on September 25, 2008. Plaintiff has not offered
28   admissible evidence that shows that her duties were permanently reassigned prior to the

1  expiration of her FMLA leave. She concedes that SCC had been tasked with cutting the
2  budget. Plaintiff's remaining arguments regarding Stahl's spreadsheet, the timeline created
3  months after plaintiff was selected for layoff, and her absence from two December 2008
4  memoranda proposing layoffs are built on speculation, and thus fail to raise a genuine issue
5  of material fact regarding whether plaintiff's use of FMLA leave was a negative factor in the
6  decision to terminate her employment. See Soremekun v. Thrifty Payless, Inc., 509 F.3d
7  978, 984 (9th Cir. 2007) (conclusory or speculative testimony "insufficient to raise genuine
8  issues of fact and defeat summary judgment"). Accordingly, we find that defendants are
9  entitled to summary judgment on the FMLA interference claim.

## III

11  Plaintiff argues that defendants violated 42 U.S.C. § 1983 when they terminated her
12  employment on June 30, 2010 "without providing her any form of due process." Pls.' MPSJ
13  at 14. To prevail on her procedural due process claim, plaintiff must show (1) that she was
14  deprived of a constitutionally protected property or liberty interest, and (2) that she was
15  denied "adequate procedural protections." Hufford v. McEnaney, 249 F.3d 1142, 1150 (9th
16  Cir. 2001) (citation omitted). To possess a protected property interest, a person must have
17  a "legitimate claim of entitlement" to it; a unilateral expectation of, need of, or desire for it
18  is not enough. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701,
19  2709 (1972). Plaintiff argues that she had a constitutionally protected property interest in her
20  employment with CGCC. According to plaintiff, she was never actually laid off from
21  MCCCD, but rather was temporarily reassigned before the layoff was effective. Thus, under
22  plaintiff's view, she retained her status as a MAT employee and was entitled to the
23  protections of the MAT policy manual throughout her employment at CGCC. To support
24  this argument, plaintiff points to a Personnel Action Form completed by MCCCD staff,
25  which lists plaintiff as being temporarily assigned to CGCC rather than hired into a new
26  position, PSOF1 ¶ 80, and to another internal form that notes that the new position is a
27  "Temporary Reassigment - in lieu of layoff." PSOF2, ex. 29. Moreover, plaintiff notes that
28  she never received separation paperwork (such as COBRA information) after her

1  employment at SCC ended in 2009.

2  It is undisputed, however, that plaintiff received notice of her layoff from her SCC
3  position prior to December 15, 2008, as required by MAT policy. It is also undisputed that
4  in December 2008, the Board voted to approve the layoff in December 2008, effective June
5  30, 2009. Plaintiff has not offered any evidence to show that this action was ever reversed.
6  Based on these facts, no reasonable jury could conclude that plaintiff had a legitimate
7  expectation in returning to her old job at SCC after June 30, 2009. It is also undisputed that
8  plaintiff knew prior to beginning her position at CGCC that it would only last for one year.
9  Plaintiff offers no evidence to suggest that there was a possibility to renew the CGCC
10 position. Indeed, even the internal form referenced by plaintiff that characterizes the move
11 to CGCC as an assignment in lieu of layoff notes that the "[a]ssignment ends 06/30/10," and
12 specifies that plaintiff "[d]oes not have reversion rights to regular assignment." PSOF2, ex.
13 29. Accordingly, regardless of whether plaintiff was rehired into the position as CGCC or
14 reassigned there, it is undisputed that plaintiff had no position to return to at SCC after June
15 30, 2009, and the position at CGCC would only last through June 30, 2010. Based on these
16 facts, we conclude that there is no genuine issue of material fact as to whether plaintiff had
17 a legitimate property interest in her one-year temporary position at CGCC beyond June 30,
18 2010. See Roth, 408 U.S. at 578, 92 S. Ct. at 2709 (no legitimate property interest in position
19 when the employment contract "specifically provided that the respondent's employment was
20 to terminate" on a certain date without any "provision for renewal whatsoever"). Thus,
21 defendants are entitled to summary judgment on the § 1983 due process claim.

22 However, even if plaintiff did have a constitutionally protected interest in the CGCC
23 position, the undisputed facts show that she was provided adequate due process. At its heart,
24 due process expresses the need for "fundamental fairness." Brewster v. Bd. of Educ. of the
25 Lynwood Unified Sch. Dist., 149 F.3d 971, 983 (9th Cir. 1998) (citation omitted). The Due
26 Process Clause demands "that a person deprived of property be given an opportunity to be
27 heard at a meaningful time and in a meaningful manner." Id. at 984 (internal quotation marks
28 and citation omitted). Before an employee with a constitutionally protected interest in her

1 employment is laid off or fired, she must be provided with the opportunity for "some form
2 of pretermination hearing." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105
3 S. Ct. 1487, 1493 (1985). An employee must be provided "oral or written notice of the
4 charges against [her], an explanation of the employer's evidence, and an opportunity to
5 present [her] side of the story." Id. at 546, 105 S. Ct. at 1495. The hearing need only happen
6 before the employee is finally deprived of her property interest. Brewster, 149 F.3d at 985.

7 Plaintiff first argues that she received no notice that her employment would terminate
8 in 2010, because she was not provided with notice pursuant to MAT policy that the Board
9 approved a release of her CGCC position prior to December 15, 2009. But as discussed
10 above, it is undisputed that plaintiff received timely notice prior to December 15, 2008 of the
11 Board's decision to lay her off from SCC, effective June 30, 2009. And it is undisputed that
12 plaintiff was aware that her new position at CGCC would only last through June 30, 2010.
13 Plaintiff's argument that she did not receive any notice that her employment would end is not
14 supported by the undisputed facts. To the contrary, she went into the position with full
15 knowledge that the position only lasted one year. Indeed, plaintiff admits that she received
16 an email from Chancellor Glasper on June 30, 2009 stating that "[b]y Board action [] you
17 have no position at SCC after June 30. It is my intent to work toward a permanent position
18 at CGCC or elsewhere. . . by June 30, 2010 but I cannot confirm such an action." DSOF2,
19 ex. 16. Moreover, it is undisputed that prior to termination of her position at CGCC, plaintiff
20 met with MCCCD personnel to discuss the possibility for continued employment for 2010-
21 2011. She met with Chancellor Glasper, who she admits is the highest-ranking official at
22 MCCCD, in May 2010. Upon Glasper's suggestion, plaintiff also met with Randolph, the
23 highest-ranking Human Resources individual at MCCCD, on June 23, 2010. Plaintiff argues
24 without elaboration and without citation to the record that her discussions with Glasper and
25 Randolph were "not meaningful." Reply to Pls.' MPSJ at 9-10. But she has not argued that
26 the meetings did not present her with an opportunity to present her side of the story. See
27 Brewster, 149 F.3d at 985 (noting that a pretermination hearing can be very limited, provided
28 that it gives notice of the charges, an explanation of the evidence, and an opportunity for the

- 12 -

1  employee to present her side of the story).

2  Finally, plaintiff argues that she was not provided with a post-termination hearing as
3  required by Section 23.2 of the MAT policy. <u>PSOF1</u> ¶ 89. Section 23.2 outlines the post-
4  termination procedures followed when an employee is terminated for cause. <u>PSOF1</u>, ex. 7
5  at 17. Plaintiff has not argued that she was terminated for cause. She has not pointed to any
6  other section of the MAT policy that outlines a post-termination hearing process for
7  employees in limited-duration assignments that come to an end. Plaintiff admits, however,
8  that she was aware of the MAT grievance policy. This policy afforded plaintiff, who
9  believed herself a MAT employee, with the opportunity to request additional review of her
10 separation from MCCCD (up to the chance to present her grievance to the governing board).
11 Plaintiff elected not to file a grievance. She has not argued that she requested any other form
12 of review of her termination of employment from CGCC that was denied. In sum, even if
13 plaintiff had a property interest in her position at CGCC, she has not shown that the pre- and
14 post-termination procedures offered to her were inadequate.

15 Because we find that no genuine issue of material fact with respect to either claim, we
16 do not reach the parties' arguments regarding liquidated damages under the FMLA.

17                                             **IV**

18 **IT IS ORDERED DENYING** plaintiffs' motion for partial summary judgment (doc.
19 71). **IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 73).
20 The Clerk shall enter judgment in favor of defendants and against plaintiff.

21 DATED this 23rd day of August, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge